# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

JEFFREY J. WALLACE,           )       CASE NO. 5:12-cv-02431
                                )
                                )
            PLAINTIFF,      )       JUDGE SARA LIOI
                                )
vs.                           )
                                )       MEMORANDUM OPINION AND
                                )       ORDER
RED BULL DISTRIBUTING      )
COMPANY, et al.,           )
                                )
                                )
          DEFENDANTS.    )

This matter is before the Court upon the motion (Doc No. 10) of defendants Red Bull Distribution Company ("RBDC")[1] and Jeff Barta ("Barta") to dismiss the action or, alternatively, to stay the proceedings, and to compel arbitration. Plaintiff Jeffrey J. Wallace ("Wallace" or "plaintiff") has filed an opposition (Doc. No. 11), and defendants have submitted a brief in reply (Doc. No. 12). The matter is ripe for determination. For the following reasons, defendants' motion to dismiss and compel arbitration is **GRANTED**.[2]

## I. FACTUAL AND PROCEDURAL BACKGROUND

RBDC is a Sacramento, California-based subsidiary of Red Bull GmbH and an affiliate of Red Bull North America, Inc. ("RBNA"). RBDC is the largest distributor in North America of Red Bull products, including Red Bull Energy Drink.

---

[1] RBDC was sued as "Red Bull Distributing Company," but asserts that its correct name is Red Bull Distribution Company. (Doc. No. 10 at 51.)

[2] Defendants' motion, brought in the alternative, for a stay of the proceedings and to compel arbitration is **DENIED as MOOT**.

(Hernandez Decl. I, Doc. No. 10–2 at ¶ 2.) On January 6, 2011, Wallace met with RBDC representatives in Cleveland, Ohio as part of RBDC's hiring process in connection with the launching of new facilities in Ohio and Michigan. (Hernandez Decl. II, Doc. No. 13, at ¶ 3.) At the meeting, Wallace first completed RBDC's Application for Employment (the "Application"). (Doc. No. 13–2.) As a condition of his employment, Wallace signed an agreement with RBDC attached to the Application entitled "Mutual Agreement for Employment At-Will and Mediation/Arbitration in California" (the "RBDC Agreement") (Doc. No. 13–2 at 125), which contained various mediation and arbitration provisions. (Doc. No. 10–2 at ¶ 5; Doc. No. 11–1 at ¶¶ 2–3; Doc. No. 13 at ¶ 6.)

After submitting the Application, Wallace was immediately interviewed by RBDC representatives. (Doc. No. 13 at ¶ 8.) After further consideration of Wallace's candidacy, RBDC extended Wallace a written offer of employment for the position of District Sales Manager, Columbus, Ohio. (Doc. No. 13 at ¶ 8; Doc. No. 13–4.) When Wallace indicated his desire to accept the offered position, he was given additional new hire paperwork, most of which Wallace signed that same day, including an agreement with RBNA entitled "Mutual Arbitration Agreement" (the "RBNA Agreement"). The RBNA Agreement also contained mediation and arbitration provisions, some of which differed from those of the RBDC agreement. (Doc. No. 10–2 at ¶ 6; Doc. No. 13 at ¶ 9; Doc. No. 11–1 at ¶ 2.) Wallace's offer letter made his employment explicitly subject to the execution of various documents, including the RBNA Agreement. (Doc. No. 13–4 at 140.) Wallace was also given RBDC's Employee Handbook, which provided that "[t]he specifics of the arbitration policy are set forth in the Mutual Agreement to Arbitrate that

you signed when you were hired," referring to the RBNA Agreement. (Doc. No. 11–2 at 96; Doc. No. 13 at ¶ 12.)

Wallace began work at RBDC on January 9, 2011. (Doc. No. 1 at ¶ 5.) On November 22, 2011, defendant Barta, an RBDC Branch Manager, informed Wallace that his employment had been terminated. (Doc. No. 1 at ¶ 7.) On September 27, 2012, Wallace filed suit against defendants, alleging racial discrimination under federal law against RBDC and racial discrimination and defamation under Ohio law against both defendants. (Doc. No. 1.) Defendants brought the subject motion seeking to dismiss or stay the case and compel arbitration.

## II. LEGAL STANDARD

The standard for ruling on defendants' motion is dictated by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, which provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" for an order compelling arbitration. 9 U.S.C. § 4. "[U]pon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement," a court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." *Id.* § 3.

The FAA manifests "a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983); *see* 9 U.S.C. §§ 1–16; *see also Shearson/Am. Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987); *Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 764 (N.D. Ohio

2009). "To enforce this dictate, [the FAA] provides for a stay of proceedings when an issue is referable to arbitration and for orders compelling arbitration when one party has failed or refused to comply with an arbitration agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing 9 U.S.C. §§ 3–4). In cases where all claims are referred to arbitration, however, the litigation may be dismissed rather than merely stayed. *See Hensel v. Cargill, Inc.*, No. 99-3199, 198 F.3d 245 (table), at *4 (6th Cir. Oct. 19, 1999); *see also Alford v. Dean Witter Reynolds Inc*., 975 F.2d 1161, 1164 (5th Cir. 1992) (holding that dismissal is proper where all claims must be submitted to arbitration); *Sparling v. Hoffman Const. Co., Inc*., 864 F.2d 635, 638 (9th Cir. 1988) (holding that 9 U.S.C. § 3 does not preclude dismissal).

If the validity of an arbitration agreement is "in issue," the court must hold a trial to resolve the question. *Id.* § 4. "In order to show that the validity of the agreement is 'in issue,' the party opposing arbitration must show a genuine issue of material fact as to the validity of the agreement to arbitrate." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). "The required showing mirrors that required to withstand summary judgment in a civil suit." *Id.* A district court, therefore, must view all facts and inferences in the light most favorable to the party opposing arbitration and determine "whether the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Id.*

The Sixth Circuit applies a four-pronged test to evaluate a motion to dismiss or stay the proceedings and compel arbitration:

(1) The Court must determine whether the parties agreed to arbitrate;

(2) The Court must determine the scope of the agreement;

(3) If federal statutory claims are asserted, the Court must consider whether Congress intended those claims to be non-arbitrable; and

(4) If the Court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). In applying this test, "doubt regarding the applicability of an arbitration clause should be resolved in favor of arbitration." *Id*. at 715.

### III. ANALYSIS

Wallace agrees that his claims fall within the scope of both the RBDC Agreement and the RBNA Agreement and does not argue that Congress intended his federal statutory claim to be non-arbitrable. (Doc. No. 11 at 84.) The Court's task is thus narrowed to the first prong of the *Stout* test: determination of whether the parties agreed to arbitrate. Wallace claims they did not, because (1) it cannot be determined whether the RBDC Agreement, the RBNA Agreement, or both should govern; and (2) in any event, the agreements are unconscionable.

**A. The Governing Agreement**

At the outset, the Court must examine which of the two documents, if either, applies. Wallace signed two different arbitration agreements on January 6, 2011. It is undisputed, however, that Wallace signed the RBNA Agreement after he signed the RBDC Agreement. (Doc. No. 13 at ¶¶ 7–9; Doc. No. 11–1 at ¶ 7.) It is also undisputed that, between the time that Wallace signed the RBDC Agreement and the time he was

presented with the RBNA Agreement, Wallace was interviewed, RBDC considered his application, and RBDC ultimately extended him an offer of employment. (Doc. No. 13 at ¶ 8.) Moreover, the RBNA Agreement contains a section entitled "Entire Agreement," which states the following:

> This Agreement constitutes the entire understanding between the parties and supersedes all prior agreements, arrangements, representations and communications (whether oral or written) regarding the subject matter contained herein and the transactions contemplated hereby, and contains the entire agreement of the parties regarding the subject of arbitration of Claims, except for any arbitration agreement in connection with Company's benefit plans. Neither party is relying or shall rely on any representations (whether oral or written) on the subject of the effect, enforceability or meaning of this Agreement, except as specifically set forth in this Agreement.

(Doc. No. 10–4 at 74).

Defendants argue in their motion as though both agreements could apply. Then, in their reply, they commit to the RBNA Agreement for the stated reason that it was signed after the RBDC Agreement.

In Wallace's opposition, he challenges the validity of the agreements for various reasons, one of which is that RBDC could allegedly pick and choose differing terms from either agreement in a way that would be prejudicial to him. Additionally, Wallace states that the Court must apply the parol evidence rule, and that it is impossible, under the rule, to determine which of the two agreements is binding. But Wallace does not define the parol evidence rule or cite to any source of law to support his conclusion.

The parol evidence rule states that "absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral

agreements, or prior written agreements." *Galmish v. Cicchini*, 734 N.E.2d 782, 788 (Ohio 2000) (quoting 11 Williston on Contracts (4 Ed. 1999) § 33:4). Wallace does not contest RBDC's assertion that the RBNA agreement was the parties' final written agreement, and the RBNA agreement contains an integration clause. The Court thus agrees with defendants that the RBNA Agreement is controlling. Accordingly, the Court will disregard Wallace's arguments to the extent they are directed specifically at the RBDC Agreement or based on the notion that defendants can select the most favorable terms from either document.

**B. Choice of Law**

The RBNA Agreement contains a choice-of-law clause, as follows:

> All questions concerning the validity and operation of this Agreement and the performance of the obligations imposed upon the parties hereunder shall be governed by the laws of the State of California, without regard to its conflicts of law principles. Only if necessary to protect the rights of the parties under the laws of the state wherein the arbitration is to be held or Employee was employed, as appropriate, the arbitrator may apply the corresponding laws of such state.

(Doc. No. 10-4 ¶ at 11.)

To evaluate this clause, the Court applies the choice-of-law rules of the forum state, Ohio. *See Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 994 (9th Cir. 2010). Under Ohio law, "the governing law specified in a contract is applied unless the chosen state lacks a substantial relationship to the parties or the transaction or unless the application of the law of the chosen state would be contrary to a fundamental policy of a state with a materially greater interest in the transaction." *Cincinnati Gas & Elec. Co. v. Westinghouse Elec. Corp.*, No. 97-3962, 165 F.3d 26 (table), at *2 (6th Cir. Sept. 1,

7

1998) (citing *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683, 686 (Ohio 1983)). Wallace does not claim that California lacks a substantial relationship to the parties or that applying California law would be contrary to a fundamental policy of Ohio, but he does include in his affidavit that he never worked for RBDC in the state of California. (Doc. No. 11–1 at ¶ 12.) Regardless, RBDC is based in California (Doc. No. 10–2 at ¶ 2), and a party's place of domicile is sufficient to meet Ohio's "substantial relationship" test. *Century Bus. Servs., Inc. v. Barton*, 967 N.E.2d 782, 794 (Ohio Ct. App. 8th Dist. 2011).

Because the RBNA Agreement contains a choice of law clause designating California law, and because Ohio law calls for the clause to be honored, the Court examines the RBNA Agreement under California law.

## C. Unconscionability

The RBNA Agreement contains the following paragraph, entitled "Procedure":

> Arbitration of any Claim shall be conducted in accordance with procedures required by California statutory and case law in order for an agreement to arbitrate disputes to be binding and enforceable, including, without limitation, (a) the California Arbitration Act, with the exception of California Code of Civil Procedure § 1283, and (b) *Armendariz v. Foundation Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 90-91 (2000). Arbitration of any Claim shall be filed with and conducted by the American Arbitration Association ("AAA") in accordance with its Rules for the Resolution of Employment Disputes, as amended (the "AAA Employment Rules"), to the extent not inconsistent with the foregoing procedures and except as modified by this Agreement. If AAA is unable or unwilling to accept the matter for any reason, the parties will submit the matter to a comparable arbitration service. Arbitration shall be initiated and all Claims shall be decided by a single, neutral arbitrator in accordance with the AAA Employment Rules. The arbitration shall be

> held at the closest office of AAA to Employee's Company office or at a
> location mutually agreed to by the parties.

(Doc. No. 10-4 ¶ at 4) (emphasis in original.)

Under California law, "[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *A & M Produce Co. v. FMC Corp.*, 186 Cal. Rptr. 114, 121 (Cal. Ct. App. 1982). "A finding of unconscionability requires a 'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh' or 'one-sided' results." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1746 (2011) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 99 Cal. Rptr. 2d 745, 767 (Cal. 2000)). To invalidate an agreement on grounds of unconscionability, both procedural and substantive unconscionability must be shown; the court applies a "sliding scale," whereby the more procedural unconscionability exists, the less substantive unconscionability need be present to invalidate an agreement, and vice versa. *Armendariz*, 99 Cal. Rptr. 2d at 767–68.

Defendants claim that "[t]he vast majority of Wallace's arguments are rendered void" by the recent United States Supreme Court decision in *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740 (2011). (Doc. No. 12 at 102.) *Concepcion* interpreted the preemptive effect of § 2 of the FAA on state law. Section 2 provides, in relevant part:

> A written provision in any . . . contract evidencing a transaction involving
> commerce to settle by arbitration a controversy thereafter arising out of
> such contract or transaction  .  .  .  shall be valid, irrevocable, and

9

enforceable, save upon such grounds as exist at law or in equity for the
revocation of any contract.

9 U.S.C. § 2. "This saving clause permits agreements to arbitrate to be invalidated by
'generally applicable contract defenses, such as fraud, duress, or unconscionability,' but
not by defenses that apply only to arbitration or that derive their meaning from the fact
that an agreement to arbitrate is at issue." *Concepcion*, 131 S. Ct. at 1746 (quoting
*Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

    As it happens, the underlying facts of *Concepcion* involve the application
of the California law of unconscionability to an arbitration agreement. There, a consumer
agreement for the sale and servicing of cell phones included a provision disallowing
classwide arbitration procedures. *Id.* at 1744. Both the district court and the Ninth Circuit
found the provision unconscionable under a previous decision by the Supreme Court of
California in *Discover Bank v. Superior Court*, 30 Cal. Rptr. 3d 76 (Cal. 2005), which
held class action waivers to be unconscionable in certain circumstances. *Id.* at 87.[3]

    Evaluating *Discover Bank*, the Court stated:

    When state law prohibits outright the arbitration of a particular type of
    claim, the analysis is straightforward: The conflicting rule is displaced by
    the FAA. But the inquiry becomes more complex when a doctrine
    normally thought to be generally applicable, such as duress or, as relevant

---

[3] Specifically, the court in *Discover Bank* ruled as follows:

    [W]hen the waiver is found in a consumer contract of adhesion in a setting in which
    disputes between the contracting parties predictably involve small amounts of damages,
    and when it is alleged that the party with the superior bargaining power has carried out a
    scheme to deliberately cheat large numbers of consumers out of individually small sums
    of money, then . . . the waiver becomes in practice the exemption of the party 'from
    responsibility for [its] own fraud, or willful injury to the person or property of another.'
    Under these circumstances, such waivers are unconscionable under California law and
    should not be enforced.

*Id.* at 87 (quoting Cal. Civ. Code § 1668).

here, unconscionability, is alleged to have been applied in a fashion that
disfavors arbitration. In *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520,
96 L.Ed.2d 426 (1987), for example, we noted that the FAA's preemptive
effect might extend even to grounds traditionally thought to exist 'at law
or in equity for the revocation of any contract.' We said that a court may
not 'rely on the uniqueness of an agreement to arbitrate as a basis for a
state-law holding that enforcement would be unconscionable, for this
would enable the court to effect what . . . the state legislature cannot.'

*Concepcion*, 131 S. Ct. at 1747 (internal citations omitted). Because "[r]equiring the
availability of classwide arbitration interferes with fundamental attributes of arbitration
and thus creates a scheme inconsistent with the FAA[,]" the Court reversed, finding the
*Discover Bank* rule to be preempted by the FAA. *Id.* at 1748.

       *Concepcion* also provides guidance on the application of the
unconscionability doctrine outside the context of class-action waivers. Discussing
arbitration agreements that fail to provide for judicially monitored discovery, the Court
noted that other courts might find such agreements to be one-sided, because "no
consumer would knowingly waive his right to full discovery," and because "restricting
discovery would be of greater benefit to the company than the consumer, since the former
is more likely to be sued than to sue." *Id.* at 1747. "And, the reasoning would continue,
because such a rule applies the general principle of unconscionability or public-policy
disapproval of exculpatory agreements, it is applicable to 'any' contract and thus
preserved by § 2 of the FAA." *Id.* Rejecting this theory, the Court stated that, "[i]n
practice, of course, the rule would have a disproportionate impact on arbitration
agreements[.]" *Id.* Additional examples cited by the Court to which "[t]he same argument
might apply" included "a rule classifying as unconscionable arbitration agreements that
fail to abide by the Federal Rules of Evidence, or that disallow an ultimate disposition by

a jury . . . ." *Id.* The Court explicitly rejected the notion that these examples are "a far cry" from a class-action waiver provision. *Id.* at 1748.[4]

Thus, in evaluating the RBNA Agreement under California unconscionability law, the Court must also evaluate California unconscionability law under *Concepcion*.[5]

### 1. Procedural Unconscionability

The procedural unconscionability inquiry focuses on "'oppression or 'surprise' due to unequal bargaining power[.]" *Id.* at 1746. "'Oppression' arises from an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice[,]" and "'[s]urprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." *A & M Produce*, 186 Cal. Rptr. at 122 (internal citations omitted).

Wallace argues that the RBNA Agreement is procedurally unconscionable because (1) it is a contract of adhesion; and (2) he was not provided a copy of the applicable rules, including the American Arbitration Association (the "AAA") Rules for the Resolution of Employment Disputes (the "AAA Rules"),[6] the California Arbitration Act (the "CAA"), and the California Code of Civil Procedure.

---

[4] The Court also noted that "[s]uch examples are not fanciful, since the judicial hostility towards arbitration that prompted the FAA had manifested itself in a great variety of devices and formulas declaring arbitration against public policy[,]" and that "it is worth noting that California's courts have been more likely to hold contracts to arbitrate unconscionable than other contracts." *Id.* at 1747 (internal citation and quotations omitted).
[5] Wallace does not discuss *Concepcion* in his opposition.
[6] The AAA Rules, last amended and effective November 1, 2009, are available at http://www.adr.org/aaa/ faces/rules (last visited July 22, 2013). Wallace does not contest that the AAA Rules are incorporated into the RBNA Agreement by reference, and the Court may take judicial notice of them. *Collins v. Diamond Pet*

12

*a. Adhesion*

A contract of adhesion is "a standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Armendariz*, 99 Cal. Rptr. 2d at 767 (quoting *Neal v. State Farm Ins. Cos.*, 10 Cal. Rptr. 781, 784 (Cal. Ct. App. 1961)).

Although Wallace does not use the term "adhesion," he does argue that the RBNA Agreement is procedurally unconscionable, in part, because he had to sign the agreement as a condition of employment, he had no opportunity to negotiate its terms, he was not "given an ample opportunity to understand the terms," and he was not represented by counsel. RBDC admits that signing the RBNA Agreement was "a condition of [Wallace's] acceptance of his employment with RBDC" (Doc. No. 10–1 at 54; Doc. No. 10–2 at ¶¶ 5–6), and there is no indication that Wallace had an opportunity to negotiate its terms. Thus, the RBNA Agreement is a contract of adhesion.

Whether a contract's adhesive nature renders it procedurally unconscionable, and if so, to what degree, is a more involved question. Prior to *Concepcion*, under California law, a finding that a contract was adhesive was also a finding of procedural unconscionability. *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010) (citing *Armendariz*, 99 Cal. Rptr. 2d at 768) ("California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally

---

*Food Processors of Cal., LLC*, No. 2:13-cv-00113-MCE-KJN, 2013 WL 1791926, at *6 n.4 (E.D. Cal. Apr. 26, 2013); *Wilson v. United Health Group, Inc.*, No. 2:12-cv-01349-MCE-JFM, 2012 WL 6088318, at *4 n.4 (E.D. Cal. Dec. 6, 2012); *Chavarria v. Ralphs Grocer Co.*, 812 F. Supp. 2d 1079, 1087 n.8 (C.D. Cal. 2011).

unconscionable to at least some degree."); *see also Stacy v. Brinker Rest. Corp.*, No. 1:12-cv-00851-LJO-BAM, 2012 WL 5186975, at *4 (E.D. Cal. Oct. 18, 2012), *report and recommendation adopted by* 2012 WL 5499449 (Nov. 13, 2012) ("Generally, under California law, pre-dispute mandatory arbitration agreements made as a condition of employment are procedurally unconscionable.") (citing *Fastbucks*, 622 F.3d at 1004). The degree of unconscionability resulting from the fact that a contract is adhesive, however, is minimal. *See, e.g.*, *Collins*, 2013 WL 1791926, at *4 ("The adhesive nature of the arbitration clause in Plaintiffs' employment agreements, without more, gives rise only to a minimal degree of procedural unconscionability"); *Miguel v. JPMorgan Chase Bank, N.A.*, No. CV 12-3308 PSG (PLAx), 2013 WL 452418, at *6 (C.D. Cal. Feb. 5, 2013) (a small amount of procedural unconscionability resulting from the take-it-or-leave it basis on which an arbitration clause was presented "is not enough to render the contract unenforceable"); *Hodsdon v. DirecTV, LLC*, No. C 12-02827 JSW, 2012 WL 5464615, at *5 (N.D. Cal. Nov. 8, 2012) ("The arbitration provision at issue here is minimally procedurally unconscionable because it is undisputedly a contract of adhesion."); *Stacy*, 2012 WL 5186975, at *5 ("[W]hile the take-it-or-leave-it nature of the Agreement renders it procedurally unconscionable, the degree of procedural unconscionability is at the lower end of the spectrum.").

Courts are split, however, as to *Concepcion*'s effect on the matter, if any. In *Concepcion*, the Court noted that the preempted *Discover Bank* rule was "limited to adhesion contracts, but the times in which consumer contracts were anything other than adhesive are long past." *Concepcion*, 131 S. Ct. at 1750 (internal citation omitted). Yet,

the Court added in a footnote: "[o]f course States remain free to take steps addressing the concerns that attend contracts of adhesion—for example, requiring class-action-waiver provisions in adhesive arbitration agreements to be highlighted," provided that such steps do not conflict with or frustrate the purpose of the FAA. *Id.* at 1750 n.6.

Some courts have interpreted *Concepcion* to require more than an adhesive contract for a finding of procedural unconscionability. *See Mance v. Mercedes-Benz USA*, 901 F. Supp. 2d 1147, 1162 (N.D. Cal. Sept. 28, 2012) ("while the contract was adhesive, this fact, alone and after *Concepcion*, does not render the arbitration provision procedurally unconscionable"); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1172 (S.D. Cal. 2011) ("In light of the Supreme Court's decision in *Concepcion*, however, the Court does not find that the adhesive nature of the agreement weighs strongly in favor of procedural unconscionability.") Others have found that *Concepcion* does not speak to the issue either way. *Coneff v. AT & T Corp.*, 673 F.3d 1155, 1161 (9th Cir. 2012) ("*Concepcion* gives little guidance" on procedural unconscionability "beyond a recognition of the doctrine's continued vitality"); *Stacy*, 2012 WL 5186975, at *5 ("procedural unconscionability was not relevant to the Court's decision [in *Concepcion*].")"; *Smith v. Americredit Fin. Servs., Inc.*, No. 09cv1076 DMS (BLM), 2012 WL 834784, at *3 (S.D. Cal. Mar. 12, 2012) ("the test for procedural unconscionability is the same as it was before *Concepcion*").

In the final analysis, the import of the *Concepcion* dicta on the procedural unconscionability of a finding of adhesion is far from clear. At any rate, under California

15

law, the amount of procedural unconscionability resulting from an agreement's adhesive nature is minimal, and insufficient to render the agreement unenforceable.

*b. Failure/Inability to Understand the RBNA Agreement*

Wallace's additional arguments in this regard do not illuminate any additional procedural unconscionability. He states in his opposition that he was not given "ample opportunity to understand the terms of the agreement," citing generally to his affidavit, which indicates that Wallace "was only given a few minutes to review and sign all the documents." (Doc. No. 11-1 ¶ at 4.) Wallace does not actually claim that he did not understand the documents, and "[e]ven if plaintiff did not read or understand the agreement, both federal and California case law support the enforcement of a properly executed, written arbitration agreement." *Lockhart v. Gen. Motors Corp.*, No. CV-01-2052-CAS, 2001 WL 1262922, at *3 (C.D. Cal. Sept. 14, 2001); *see also Jackson v. Universal Pictures*, No. B153210, 2003 WL 1091045, at *3 (Cal. Ct. App. Mar. 13, 2003) ("failure to understand a contract's terms is not a legally cognizable defense"). Moreover, a post-*Concepcion* court examining the issue of a prospective employee feeling pressured to quickly sign an arbitration agreement has found no resulting procedural unconscionability. *Jasso v. Money Mart Express, Inc.*, 879 F. Supp. 2d 1038, 1051 (N.D. Cal. 2012).

Wallace also asserts that he was not represented by counsel when he signed the agreements. To the extent this statement, unaccompanied by elaboration or citation to authority, is intended to go toward a showing that Wallace lacked bargaining power, that has already been determined in Wallace's favor in the Court's finding that the

16

RBNA Agreement is adhesive. To the extent it is intended to illuminate additional procedural unconscionability, exactly how is unclear. Wallace had over fifteen years' experience in sales, much of which was in a managerial capacity. (Doc. No. 13-1.) He was not "an uneducated, low-wage employee without the ability to understand that he was agreeing to arbitration." *Dotson v. Amgen, Inc.*, 104 Cal. Rptr. 3d 341, 347 (Cal. Ct. App. 2010).[7]

*c. The Applicable Arbitration Rules*

Additionally, Wallace argues that the RBNA Agreement is procedurally unconscionable because he was not provided a copy of the applicable rules. It is undisputed that the RBNA Agreement incorporates the AAA Rules, the CAA, and the California Code of Civil Procedure by reference.

"Under general California rules of contract interpretation, matters like the AAA [R]ules can be incorporated into a contract by reference provided the incorporation is clear and the incorporated rules are readily available." *Ulbrich v. Overstock.Com, Inc.*, 887 F. Supp. 2d 924, 932–33 (N.D. Cal. 2012). Notwithstanding, some California courts have held that, in the context of arbitration, incorporation by reference is not enough, and failure to provide a copy of the incorporated rules is procedurally unconscionable. *See,*

---

[7] In addition, the RBNA Agreement is not an instance where an arbitration provision is hidden in fine print. It is a separate document, wholly devoted to arbitration, and containing two separate warnings, both in bold, capital letters. The first reminds the employee that "**BY VOLUNTARILY AGREEING TO THIS ARBITRATION AGREEMENT, COMPANY AND EMPLOYEE BOTH GIVE US THEIR RIGHTS TO TRIAL BY JURY.**" (Doc. No. 10-4 ¶ 6.) The second urges the employee to "**PLEASE READ THIS AGREEMENT CAREFULLY. BY SIGNING IT, YOU AGREE TO FINAL AND BINDING ARBITRATION OF ANY AND ALL DISPUTES BETWEEN YOU AND COMPANY INCLUDING, WITHOUT LIMITATION, DISPUTES RELATED TO YOUR EMPLOYMENT WITH COMPANY AND TERMINATION THEREOF, AND CLAIMS OF DISCRIMINATION AND HARASSMENT. THIS AGREEMENT MAY BE ENFORCED BY THE PARTIES.**" (Doc. No. 10-4 at 74.)

*e.g.*, *Samaniego v. Empire Today LLC*, 140 Cal. Rptr. 3d 492, 498 (Cal. Ct. App. 2012) (failure to provide a copy of the relevant arbitration rules is "significant" to a finding of procedural unconscionabilty); *Zullo v. Superior Court*, 127 Cal. Rptr. 3d 461, 466–67 (Cal. Ct. App. 2011) (failure to attach the AAA Rules "adds a bit to the procedural unconscionability"); *Fitz v. NCR Corp.*, 13 Cal. Rptr. 3d 88, 101 (Cal Ct. App. 2004) (employer's arbitration policy "incorporates arbitration rules that were not attached and requires the other party to go to another source in order to learn the full ramifications of the arbitration agreement"); *Harper v. Ultimo*, 7 Cal. Rptr. 3d 418, 422 (Cal. Ct. App. 2003) (finding both oppression and surprise resulting from failure to provide a copy of the rules).

These cases, however, set out stricter rules for arbitration agreements than those that apply to other types of contracts. This is precisely what *Concepcion* forbids. Courts that have addressed the issue agree. *See Collins*, 2013 WL 1791926, at *5 (in light of *Concepcion*, arbitration agreements cannot be treated differently from other types of contracts with respect to incorporation by reference); *McFarland v. Almond Bd. of Cal.*, No. 2:12-CV-02778-JAM-CKD, 2013 WL 1786418, at *5 (E.D. Cal. Apr. 25, 2013) (a bright-line rule requiring that a copy of relevant arbitration rules be provided with the arbitration agreement is preempted by the FAA under *Concepcion*); *Ulbrich*, 887 F. Supp. 2d at 933 (same).

Because the FAA preempts rules that treat incorporation by reference in arbitration agreements differently than in contracts generally, Wallace has failed to show

that the incorporation by reference in the RBNA Agreement is procedurally unconscionable.

In sum, because the RBNA Agreement is a contract of adhesion, the Court finds that some degree of procedural unconscionability is present. However, as indicated by California case law, the amount of procedural unconscionability is minimal. As a result, in order for the RBNA Agreement to be invalidated as unconscionable, the degree of substantive unconscionability present must be large.

### 2. Substantive Unconscionability

Substantive unconscionability focuses on "'overly harsh' or 'one-sided' results." *Concepcion*, 131 S. Ct. at 1746. An arbitration agreement must have a "modicum of bilaterality." *Armendariz*, 99 Cal. Rptr. 2d at 770. Wallace contends that the RBNA Agreement is substantively unconscionable because it: (1) excessively limits the amount of discovery he can conduct; (2) contains choice-of-law and forum selection clauses; (3) may be modified against his will; and (4) empowers the arbitrator to award attorney's fees to the prevailing party.[8]

*1. Discovery Limitations*

*Concepcion* explicitly rejected the argument that discovery restrictions in arbitration agreements are unconscionable. 131 S. Ct. at 1747. Although a rule declaring

---

[8] Wallace fails to support any of his substantive unconscionability arguments with case law or other authority on the doctrine of unconscionability. "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Nevertheless, the Court will evaluate the merits of Wallace's arguments.

discovery restrictions to be unconscionable could be said to apply the general principle of unconscionability, and therefore to apply to "any" contract as required by § 2 of the FAA, "the rule would have a disproportionate impact on arbitration agreements[,]" and is therefore preempted by the FAA. *Id.*; *see also Lucas v. Hertz Corp.*, 875 F. Supp. 2d. 991, 1008 (N.D. Cal. 2012) (finding, in light of *Concepcion*, that "limitations on arbitral discovery no longer support a finding of substantive unconscionability"); *Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1175 (S.D. Cal. 2011) (agreement leaving the amount of discovery up to the arbitrator not substantively unconscionable); *but cf. Walker v. Ryan's Steak Houses, Inc.*, 400 F.3d 370, 387–88 (6th Cir. 2005) (pre-*Concepcion* finding that discovery limitations in arbitration were substantively unconscionable where, unlike in the instant case, the arbitration panel was inherently biased against applicants/employees and where, as in the instant case, the panel had discretion to allow more than one deposition).

Under California law, "[d]iscovery limitations are an integral and permissible part of the arbitration process." *Dotson*, 104 Cal. Rptr. 3d at 348 (citing *Armendariz*, 99 Cal. Rptr. 2d at 760–61). Parties are "permitted to agree to something *less than* the full panoply of discovery provided in [the California Code of Civil Procedure]." *Armendariz*, 99 Cal. Rptr. 2d at 761 (emphasis in original). "'Adequate' discovery does not mean unfettered discovery." *Mercuro v. Superior Court*, 116 Cal. Rptr. 2d 671, 683 (Cal. Ct. App. 2002).

Wallace argues that the RBNA Agreement unconscionably limits his ability to conduct discovery because § 4.2 reduces the response time for responding to

20

discovery from 30 days in the Federal Rules of Civil Procedure to 25 days, and because § 4.3 entitles each party to "a reasonable amount of discovery" without defining "reasonable amount." (Doc. No. 11 at 88.) His first point is effectively a claim that any discovery limitation, no matter how small, is substantively unconscionable, which is clearly contradicted by governing case law. His second point is effectively a claim that the amount of discovery may not be left to the discretion of the arbitrator, which is contrary to *Grabowski*. Without citing any authority in support of his position, Wallace has failed to show that the discovery limitations in the RBNA Agreement are substantively unconscionable.

*2. Choice-of-law and Arbitration Forum Selection Clauses*

Wallace also contends that "RBDC unilaterally decides not only the forum location to arbitrate but also adds choice of law provisions designed to favor it and to increase the potential outcome of a good result." (Doc. No. 11 at 88–89.) But he grounds this argument solely upon the erroneous notion that RBDC can pick and choose provisions from either the RBDC Agreement or the RBNA Agreement, a notion this Court rejected in finding the RBNA Agreement to be controlling. Accordingly, Wallace has not actually argued that the RBNA Agreement's choice-of-law and arbitration forum selection clauses are, in themselves, substantively unconscionable.[9]

---

[9] Here, by "choice of law," Wallace is referring to the RBNA Agreement's incorporation of the AAA Rules, and "courts generally regard the AAA rules as being neutral and fair." *Collins*, 2013 WL 1791926, at *7 (internal quotation omitted). The arbitration forum selection clause, which states that "[t]he arbitration shall be held at the closest office of AAA to Employee's Company office or at a location mutually agreed to by the parties[,]" is also neutral and fair.

*3. Modification Provision*

Next, Wallace claims that the method for modifying the RBNA Agreement is substantively unconscionable. The modification provision states, in relevant part, "[t]his Agreement . . . may not be modified or revoked except by a writing signed by the Employee and the Chief Executive Officer of [RBNA], which writing specifically states an intent to modify or revoke this Agreement." (Doc. No. 10-4 at ¶ 9.) According to Wallace, "[i]f a modified [RBNA Agreement] were presented to plaintiff for his signature, RBDC would most likely force him to sign it as a condition of continued employment." (Doc. No. 11 at 89.)

Wallace's purely conjectural and hypothetical argument is insufficient to show that the modification provision is substantively unconscionable. *See Klein v. Verizon Commc'ns, Inc.*, No. 1:12-cv-757, ___ F. Supp. 2d. ___, 2013 WL 399222, at *10 (E.D. Va. Jan. 31, 2013) (rejecting hypothetical argument that a company's right to amend an arbitration provision in the future could allow the company to unfairly change the rights and procedures of ongoing proceedings).[10] In the absence of any authority or developed argument to support Wallace's claim, the Court finds that the modification provision is not substantively unconscionable.

---

[10] Moreover, even if Wallace's hypothetical scenario had actually come to pass, it would not effectively differ from a unilateral modification provision, and *Concepcion* suggests that a completely unilateral modification provision is not substantively unconscionable. There, the adhesive consumer agreement before the Court "authorized AT & T to make unilateral amendments, which it did to the arbitration provision on several occasions." *Concepcion*, 131 S. Ct. at 1744. Yet, the Court did not find the agreement substantively unconscionable. *See also Smith*, 2012 WL 834784, at *4 (finding that the Court in *Concepcion* was "unconcerned" with the unilateral right of AT & T to amend the agreement).

22

*4. Fees*

Finally, Wallace proffers that the RBNA Agreement unconscionably "empower[s] the arbitrator to award prevailing party attorney fees, thereby placing [Wallace] at a greater risk in pursuing such claims in arbitration than if he had pursued those claims in court." (Doc. No. 11 at 89.) This is simply incorrect. The RBNA Agreement gives the arbitrator "the authority to award attorneys' fees and costs to the prevailing party *in accordance with the applicable law governing the Claim*." (Doc. No. 10-4 ¶ 5) (emphasis added.) This essentially mimics the AAA Rules, which allow the arbitrator to award "attorney's fees and costs[] in accordance with applicable law." AAA Rules § 39(d). Not surprisingly, numerous courts have ruled that this common clause is not unconscionable in an arbitration provision. *See, e.g.*, *Collins*, 2013 WL 1791926, at *7; *Luchini v. Carmax, Inc.*, No. CV F 12-0417 LJO DLB, 2012 WL 2995483, at *11 (E.D. Cal. July 23, 2012); *Conroy v. Citibank, N.A.*, No. CV 10-04930 SVW (AJWx), 2011 WL 10503532, at *5 (C.D. Cal. July 22, 2011).

Because the degree of procedural unconscionability present in the RBNA Agreement is minimal, Wallace needed to demonstrate a substantial degree of substantive unconscionability for the agreement to be deemed unconscionable. Far from meeting that burden, Wallace has failed to identify any substantive unconscionability whatsoever. Accordingly, the Court will compel arbitration of Wallace's claims.

**D. Disposition**

It is undisputed that all of Wallace's claims fall within the scope of the RBNA Agreement. (Doc. No. 11 at 84.) The final matter before the Court is whether to

stay the proceedings pending arbitration. *Stout*, 228 F.3d at 714. The FAA requires that a court, upon being satisfied that the issues involved in the suit are referable to arbitration, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3; *see also ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091, 1094–95 (6th Cir. 2002). This Court has indeed determined that all of plaintiff's claims against defendants are referable to binding arbitration. Therefore, because "there is 'nothing left for the district court to do but execute judgment,' dismissal [of the case] is appropriate." *Ewers v. Genuine Motor Cars, Inc.*, No. 1:07 CV 2799, 2008 WL 755268, at *7 (N.D. Ohio Mar. 19, 2008) (quoting *Arnold v. Arnold*, 920 F.2d 1269 (6th Cir. 1990)). Accordingly, pursuant to Fed. R. Civ. P. 12(b)(1), plaintiff's claims are **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss the case and compel arbitration is **GRANTED**. Plaintiff is **ORDERED** to enter into arbitration to resolve any disputes relating to his discharge. This case is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: July 23, 2013

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**